## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LATANYA RI'CHARD,** *on behalf of herself and all others similarly situated,* | **Case No:** |
| **Plaintiff,** | **CLASS ACTION COMPLAINT** |
| **v.** | **JURY TRIAL DEMANDED** |
| **ONLY WHAT YOU NEED, INC. d/b/a Owyn,** | |
| **Defendant.** | |

Plaintiff Latanya Ri'Chard ("Plaintiff" or "Ms. Ri'Chard"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, brings this action against Only What You Need, Inc. d/b/a Owyn ("Owyn" or "Defendant"). For her Complaint, Plaintiff alleges the following based upon personal knowledge as to her own acts and experiences and upon the investigation conducted by counsel as to all other allegations:

### SUMMARY OF THE ACTION

1.      Plaintiff, on behalf of herself and all putative members of the "Class" (defined below), brings claims under California's Business & Professional Code (Cal. Bus. & Prof. Code), specifically Cal. Bus. & Prof. Code §§ 17200 *et seq.* and Cal. Bus. & Prof. Code §§ 17500 *et seq.*,; California's Civil Code (Cal. Civ. Code), specifically § 1750 et seq.; Common law Fraud; and warranties against Defendant Owyn as a class action.

2.      This action arises from the deceptive trade practices of Defendant Owyn in its manufacture and sale of numerous protein products including their "non-dairy protein shake" whose packaging and advertisements claim the Products contain "20g of Plant-Based Protein" per

serving, touting their commitment to "Milk Plants, Not Cows." The non-dairy protein shake, in particular, is available for purchase in six flavors: Dark Chocolate, Cold Brew Coffee, Smooth Vanilla, Cookies and Creamless, Sea Salted Caramel, and Strawberry Banana. This product is one sub-brand of Defendant Owyn's broader line of non-dairy, plant-based protein shakes, powders and supplements, such as "Pro Elite High Protein Shakes," "Protein Powders," and "Complete Nutrition Shakes," (all such products referred to herein as the "Products"), each of which being marketed for "so many benefits in one bottle," chiefly among them being protein content. The Products are explicitly and purposefully misbranded for protein content, prominently displaying "20g of Protein" on the nutritional label as well as the principal display panel (front panel) of the Products' labels. Despite Defendant Owyn's claims that the Products, excluding the Pro Elite which contains "32-35g of Protein," contain "20g of Protein;" independent laboratory testing has revealed that the Products contain substantially less protein than that which is advertised. Specifically, the non-dairy protein shake contains **approximately 17.5g** of actual Protein as opposed to the "20g" Defendant purported to be true.

3. Defendant Owyn's claims regarding the protein content in the Products, including on its labels, webpages and other marketing and advertising media and materials, is purposely deceptive to create a competitive advantage against compliant competitors. However, it is the consumers that ultimately suffer by this deviant and non-compliant behavior because Defendant Owyn knowingly provide non-factual information and omit relevant information in an attempt to deceive and entice sales to these consumers who are seeking to purchase high protein products conducive to weight management, muscle development, and other protein-specific health goals.

**JURISDICTION AND VENUE**

4.      Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

5.      This action is properly before this Court, and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. Specifically, at least one member of the proposed class is a citizen of a different state from Owyn, and the number of proposed Class Members exceeds 100, and the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs. See 28 U.S.C. § 1332(d)(2)(A).

6.      This Court has personal jurisdiction over the Defendant Owyn because Defendant Owyn has purposely availed itself of the benefits and privileges of conducting business activities within California, including by marketing, distributing, and selling the Products in the state of California. Defendant Owyn has sufficient minimum contacts within the state of California to establish Defendant Owyn's presence in the state of California, and certain material acts upon which this suit is based occurred within the state of California. Defendant Owyn does substantial business in the state of California and within this District, and otherwise maintains requisite minimum contacts with the state of California. Specifically, Defendant Owyn distributed and sold the Products in the state of California.

7.      Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391 (c), because Defendant Owyn resides (i.e., is subject to personal jurisdiction) in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, including that Plaintiff purchased and used the Products in the state of California and in this District. Additionally, Defendant Owyn distributes the Products in this District, receives substantial compensation and profits from the sale and lease of Products in this

District, and has and continues to conceal and make misrepresentations and material omissions in this District.

## PARTIES

8.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

9.     Plaintiff Ri'Chard is a citizen and resident of Merced, California.

10.     Defendant Owyn is incorporated in Delaware with its principal office in the State of New Jersey. Defendant Owyn makes and distributes non-dairy, plant-based protein supplements, meal replacements and powders throughout the United States, specifically, to consumers in the state of California.

11.     Defendant Owyn's Products are sold on its own and other third-parties' websites, along with through various physical retailers, including Amazon and Walmart. The Products are purchased by consumers for personal use and consumption in the state of California and throughout the United States.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### *Federal and State Regulations*

12.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

13.     The federal laws and regulations discussed below are applicable nationwide to all sales of packaged food products. Additionally, no state imposes different requirements on the labeling of packaged food for sale in the United States.

14.     The Food and Drug Administration regulates nutrition content labeling. According to these regulations, manufacturers are required to include Nutrition Facts Panels (NFPs) on many of their products. 21 U.S.C. § 343(q). Included in the NFPs is disclosures of the number of calories, the amount of fat, carbohydrates, and protein in the product.  NFPs are usually printed on the side or back of a product's packaging.

15.     Manufacturers are required to include protein quantity in the NFPs of their products. 21 U.S.C. § 101.9(c)(7).  The protein quantity in the NFP is measured by "the number of grams of protein in a serving," Manufactures may calculate the protein quantity by using the food's nitrogen content.

16.     When a manufacturer makes a statement outside the NFP, and that statement describes the amount of one of the required nutrients to be included in the NFP, the Food and Drug Administration refers to such a statement as a "nutrient content claim."  For example, if the claim outside the NFP describes the amount of Protein- a required nutrient that is required to be included in the NFP- the product contains, the statement is referred to as a "protein claim." 21 C.F.R. § 101.13(b).

17.     If a product does contain a "protein claim," then manufacturers must calculate the "corrected amount of protein per serving" based on the quality of the product's protein using the FDA required "Protein Digestibility Corrected Amino Acid Score"—known by its acronym PDCAAS (pronounced PeeDee-Kass). The PDCAAS combines a protein source's amino acid profile and its percent digestibility into a discount factor ranging from 0.0 to 1.0 that, when multiplied by the total protein quantity, shows how much protein in a product is actually available to support human nutritional requirements. The regulations term this the "corrected amount of protein per serving." 21 C.F.R. § 101.9(c)(7)(ii).

18.     In addition to using the PDCAAS method, the manufacturer must then use the PDCAAS computation to provide "a statement of the corrected amount of protein per serving" in the nutrition facts panel ("NFP") "expressed as" a percent daily value ("%DV") and placed immediately adjacent to the statement of protein quantity. 21 C.F.R. § 101.9(c)(7)(i)-(iii). The %DV is the corrected amount of protein per serving divided by the daily reference value for protein of 50 grams.

19.     The FDA regulations that govern nutrient content claims are also clear that the manufacturer may not make any front label claims about the amount of protein in the product unless it complies with these two requirements. See 21 C.F.R. § 101.13(b) ("A nutrient content claim[] may not be made on the label…unless the claim is made in accordance with this regulation [i.e., § 101.13]…" and (n) ("[n]utrition labeling in accordance with § 101.8…shall be provided for any food for which a nutrient content claim is made"); accord 58 Fed. Reg. 2302, 23310 (manufacturer can only make a "nutrient content claim…on the label or in labeling of a food, provided that the food bears nutrition labeling that complies with the requirements in proposed § 101.9.").

20.     Under the FDCA, the term false has its usual meaning of "untruthful," while the term misleading is a term of art that covers labels that are technically true, but are likely to deceive consumers. Under the FDCA, if any single representation on the labeling is false or misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

21.     Representing that the Products contain a certain amount of protein per serving as Defendant Owyn's labels do is a statement of fact, and use of these phrases on the labels of packaged food is limited by the aforementioned misbranding laws and regulations.

*Consumer Demand for Protein*

22.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

23.     Many American consumers are health conscious and seek wholesome, natural foods to keep a healthy diet, so they routinely rely upon nutrition information when selecting and purchasing food items.

24.     The FDA encourages consumers to "use %DV to compare food products" and to "choose products that are higher in nutrients [the consumer] want to get more of and lower in nutrients [the consumer] want to get less of."[1]

25.     Importantly, Proteins function as building blocks for bones, muscles, cartilage, skin, and blood. They are also building blocks for enzymes, hormones, and vitamins. Consumers trying to gain muscle seek to ensure their protein intake is sufficiently high to promote muscle growth and prevent muscle loss. Many studies report that consuming protein after exercise can aid recovery by reducing muscle damage and improving muscle performance. Therefore, the FDA currently recommends consuming fifty grams of protein each day.[2]

26.     As more and more American consumers seek wholesome, natural foods to keep a healthy diet, the food and beverage service industry is helping to move the American diet in alternative direction by offering more plant-based or plant-forward dishes and drinks.

27.     As of 2023, plant-based foods dollar sales reached $8.1 billion, growing 79% over the past five years.[3] More Importantly, from 2021 to 2023, a majority of plant-based categories

---

[1] https://www.fda.gov/food/nutrition-facts-label/how-understand-and-use-nutrition-facts-label#:~:text=It%20shows%20you%20some%20key,%2C%20Sodium%2C%20and%20Added%20Sugars.
[2] https://www.fda.gov/food/nutrition-facts-label/daily-value-nutrition-and-supplement-facts-labels
[3] https://plantbasedfoods.org/latest/groundbreaking-pbfa-report-reveals-consumers-opt-for-plant-based-when-given-the-choice

grew in dollar sales, including, but not limited to, plant-based ready-to-drink beverages and plant-based protein liquids and powders growing in both dollar sales and unit sales.[4]

### *Defendant Owyn's Marketing and Labeling of the Products*

28.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

29.     Defendant Owyn is in the business of developing, manufacturing, packaging, promoting, advertising, and selling protein and other dietary supplement products under the brand name "Owyn." The supplement products include "OWYN Non-Dairy Protein Shakes[s]" which are sold in a variety of flavors.

30.     On the websites where the Products are sold, including Defendant Owyn's own website, along with those of its partnered retailers like Amazon.com, Walmart, Target, CVS, and Costco, Defendant Owyn prominently advertises the Products' particulars, emphasizing and misrepresenting among, and above, all other factors that it contains "20g of Plant-Based Protein" from "Pea Protein, Organic Pumpkin Seed Protein, [and] Organic Flax Oil." An array of Owyn's advertising claims, which appear in all iterations of virtual marketing for the Products, can be found below for reference. Unmistakably important to the Products' advertising is their protein content, which is blatantly represented, not only on the nutritional label affixed to each bottle and used as a key advertising agent on each website, but also, in vastly increased font size on the Products' front-facing labels. Defendant Owyn's explicit representation of protein content, for example the "20g of Plant-Based Protein," in the Products is bolstered by their deliberate proclamations that "what's inside matters" and what's inside is "clean [and] nutritious."

---

[4] *Id.*

31.     Defendant Owyn even advertises the importance of incorporating protein into a consumer's diet.  According to Defendant Owyn's website, Defendant Owyn's Medical Advisor, Cynthia Sass, MPG, RD, states that "OWYN is a go-to product for the athletes and performers I work with. I recommend it as a post-workout recovery beverage because it checks a number of boxes that align with my nutrition philosophies. OWYN provides an impressive amount of plant-based protein without excess added sugar or artificial additives, is free from top allergens, gut friendly, gluten free, non-GMO, and delicious!"[5]

32.     The brand utilizes an acronym in their name: "Only What You Need," purposefully vague so as to encompass a broad array of assumptions about the Products' content and transparency thereabout. Defendant Owyn exploits this phrase to imply truth in advertising to customers, carrying on to assert that the Products provides "complete nutrition," referring to its purported high protein levels and other supporting nutritional factors.

33.     Moreover, Defendant Owyn takes special care through its brand marketing and[6] resources like "Protein Shake FAQs" on its website to reassure its customers, who are looking for high-protein supplements and meal replacements, that the Products not only pack a potent amount of protein, but also that the protein being used is a "complete protein" which, impliedly, at worst matches and at best goes above and beyond in providing health benefits than other proteins. Further strategic marketing claims from the Defendant include that the Products "contribute to a balanced diet" and "a healthy lifestyle" through their protein content which aids in "weight management and muscle development." Further still and with all of this in mind, Defendant Owyn endorses the Products as a "Guilt Free Cheat Meal" and "perfect for meal replacement," meanwhile knowingly

---

[5] https://liveowyn.com/medical-advisory-board/
[6] See Owyn - Product Page; Amazon - Product Page; Walmart - Product Page; Target - Product Page; CVS - Product Page; Costco – Product Page

misrepresenting the accurate protein value of each serving consumed and, therefore, shorting consumers on the level of nutritional sustenance they sought out and were promised.

**Defendant Owyn's Website Representations:**







# Protein Shake FAQs

### Do protein shakes make you gain weight?

_Protein shakes help contribute to a balanced diet_ and daily caloric intake to maintain a healthy lifestyle. Boosting protein intake can assist in weight management and muscle development.

### Can a protein shake replace a meal?

Protein shakes are considered a supplement to your regular diet. While OWYN plant based protein shakes provide the essential amino acids to make a complete plant protein source, they are best suited as a snack or post-workout fuel. _OWYN Complete Nutrition_ shakes provide balanced macronutrients, making them perfect for meal replacement! _Read more about the difference here._

## What do BCAAs and essential amino acids do?

Proteins are made up of amino acids, which are the main building blocks of life. Essential amino acidscan't be made by the body and must be consumed through diet. BCAAs are three essential amino acids – leucine, isoleucine, and valine – that help build muscle and repair tissues. OWYN protein shakes provide all essential amino acids making it a complete protein.

**Defendant Owyn's Representations on Amazon.com:**









**From the brand**



**From the brand**



## Pure, complete nutrition. Made with only the good stuff.

        

No Dairy    No Gluten    No Soy    No Egg    No Peanuts    No Tree-Nuts    No Fish    No Shellfish







**Years in the making. Incomparable Flavor.**

At OWYN, We believe nourishing your body should be easy & delicious. We spent 4 years developing this product to ensure it's 100% plant based, 100% clean, and 100% quality ingredients.

The result? A clean, fulfilling nutritional shake with rich, decadent flavor.

We do the research so you don't have to!

**Clean Ingredients. Optimum Nutrition.**

So many benefits in one bottle:

- 20g of clean, plant based protein from Organic Pumpkin Seeds, Flax, & Pea
- Prebiotics for gut & digestive support
- 535mg Vegan Omega-3 to support anti-inflammatory on the body.
- Superfoods Greens Blend of Broccoli, Kale, & Spinach
- Zero Major Allergens! Our products are thoroughly tested, making them dairy, soy, gluten / wheat, egg, peanuts, & tree nut free!

**Perfect for Every Day and On The Go.**

Easy to grab and go! Take it with you on the road, on a hike, or to the office for your afternoon snack. These bottles are ideal for on-the-go.

You can feel good about what goes in your body, any time!

Great for the whole family, too!

# "Ultimately, what sets OWYN apart from similar products, such as Soylent or Vital Proteins, is its ingredients."

  RUNNER'S WORLD  MEN'S FITNESS 

**Important information**

**Ingredients**

Water, OWYN Protein Blend (Pea Protein, Organic Pumpkin Seed Protein, Organic Flax Oil), Vegetable Fiber, Organic Cane Sugar, Sunflower Oil, Cocoa Powder, Sunflower Lecithin, Natural Flavors, Himalayan Pink Salt, Guar Gum, Greens Blend (Broccoli, Spinach, Kale), Monk Fruit Extract.

**Legal Disclaimer**

Statements regarding dietary supplements have not been evaluated by the FDA and are not intended to diagnose, treat, cure, or prevent any disease or health condition.

   

| | Protein Shakes | Meal Replacement Shakes | Protein Powders | Pro Elite Series |
|---|---|---|---|---|
| Calories | 180 | 250-300 | 150 | 210-230 |
| High Quality Plant-Based Protein | 20g | 20g | 20g | 32-35g |
| Net Carbs | 5g | NA | 7g | 0g |
| Upgraded Ingredients | Superfoods Greens Blend | 23 Vitamins & Minerals | Superfoods Greens Blend | Superfoods Greens Blend |
| Contains Omega-3 | 535mg Vegan Omega-3 | 535mg Vegan Omega-3 | No | 535mg Vegan Omega-3 |
| Digestive Support | Prebiotic Supplement | No | 10M CFU Probiotic Supplement | Prebiotic Supplement |
| Plant-Based / Vegan | ✓ | ✓ | ✓ | ✓ |
| 3rd party tested to ensure no cross contact with the top 8 Major Allergens | ✓ | ✓ | ✓ | ✓ |

**Defendant Owyn's Representations for Target:**



**Defendant Owyn's Representations for CVS:**

People often ask us how we always feel good, look great, and recover faster. The answer is simple: don't feed your body food that it wasn't meant to eat. You are holding the perfect protein drink made with Only What You Need-do dairy, no garbage, nothing artificial, and free of the top 8 allergens.

100% PLANT-BASED. UNCOMPROMISED TASTE.



**Defendant Owyn's Representations for Costco:**

Features:
- (12) 11.14 fl oz Protein Drinks
- 20g of Plant-Based Protein
- Excellent Source of Fiber
- Delivers All 9 Essential Amino Acids
- Top 8 Allergen-Free (Non-GMO, Dairy-Free, Gluten-Free, Soy-Free)

**Flavor :** Dark Chocolate

Dark Chocolate



*Defendant Owyn's Marketing and Labeling of the Products Violates Federal Food Labeling*

*Laws*

34.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

35.     Protein is a Class I nutrient by regulation (21 CFR 101.9(g)(3)) in these Products. Class I nutrients must be present at 100% or more of the value declared on the label; in other words, the nutrient content identified by the laboratory analysis must be at least equal to the label value.

36.     Plaintiff conducted independent protein calculation testing of the Products above.

37.     Plaintiff has analyzed the Products and evaluated them in accordance with the nitrogen factor most appropriate for the plant-based protein source(s) to be compliant with the regulations regarding the appropriate, accurate labeling of a Class I nutrient.

38.     Plaintiff has also estimated an assumptive protein content, based on nitrogen analysis and application of nitrogen conversion factor of 6.25, which is general to foods and Class II regulations.

39.     Plaintiff has assessed the % Daily Value in alignment with protein claim.

40.     Plaintiff has analyzed the Product for its amino acid composition, as the sum of amino acid standardized to pre-hydrolysis mass, should approximate protein content, based on estimation for protein calculation

41.     Testing results for nitrogen content and application of appropriate nitrogen conversion factor based on formulation has revealed that the actual versus labeled protein content for the non-dairy protein shake product is 17.5g of protein per serving despite being labeled as "20g of Protein". Moreover, calculations for protein content using a nitrogen conversion factor for protein in general (e.g. Class II) reveal a significantly low level of protein vs label claims that determines the product misbranded. 10. Daily Value listed on package is erroneous unless PDCAAS determination yields 17% which suggests an inferior nutritional protein offering despite contradictory marketing and deceptive use of "complete." Thus, consumers in the state of California, such as Plaintiff, and nationwide have been, and continue to be, misled into purchasing Defendant Owyn's nutritional protein Products with the belief that they contain more protein than is true.

42.     Nonetheless, Defendant Owyn continued to sell their Products with misleading labels, despite knowing the inaccuracy of such representations. Defendant Owyn chose, and

continues to choose, financial gain at the expense of consumers by overclaiming true protein content concealing and omitting disclosure of this critical misrepresentation to their consumers who, as they well know, purchase the Products in support of weight loss, muscle development and other protein-related health goals, including by using meal replacing plant-based protein in their diet.  Defendant Owyn are, therefore, aware that such consumers, in their purchase decisions, rely upon the material misrepresentation that the Product contains a certain amount of protein.

43.    Plaintiff does not seek to impose requirements greater than those required by FDA regulations. Plaintiff's claims do not seek to expand upon, or call for stricter standards than, the labeling or marketing requirements established by FDA regulations.

44.    Despite such clear and convincing marketing of high protein Products, explicitly labeled with anywhere from 20-35g of protein, independent laboratory testing completed at the direction of Plaintiff revealed that the non-dairy protein shake, labeled with "20g of Protein," contained approximately 17.5g of true Protein, far less than the "20g" represented prominently on the Products' packaging and in Defendant Owyn's advertising and promotional materials.

45.    Defendant Owyn's sale of the Products clearly deceives consumers because the package itself touts, on the front AND the back, "20g of Protein" per serving of their contents.

46.    Defendant Owyn's advertising, too, deceives consumers by stating that the Products contain "20g of Protein" per serving.

47.    Defendant Owyn's sale of the Products is deceptive to reasonable consumers, including Plaintiff, because there is no practical way for them to know prior to purchase that the Products are, in fact, lower in protein than was and is being marketed by Defendant Owyn on and about the Products.

## *PLAINTIFF'S EXPERIENCES*

48.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

49.     Beginning in or around April 2022, Plaintiff Ri'Chard purchased the 4-pack Owyn Protein Shake in the Dark Chocolate flavor from Walmart which claimed to contain "20g of Protein."

50.     Plaintiff Ri'Chard purchased the Product because Plaintiff had decided to incorporate more plant-based products into her diet.

51.      Plaintiff's decision to purchase Defendant Owyn's product was due to Defendant Owyn's Products claiming it had a higher protein content as compared to other non-dairy, plant-based protein supplement products.

52.     Plaintiff Ri'Chard relied on the truthfulness of Defendant Owyn's labels that promised that the Products provided a specific amount of protein per serving. Plaintiff Ri'Chard believed the truth of each representation, i.e., that the product would actually provide the specific amount of protein claimed on the labels. Plaintiff relied on the Products to meet her daily dietary protein needs.

53.     At no point, either during Plaintiff Ri'Chard's research on the Products or at the point of sale, did Defendant Owyn disclose that the Products actually contained 17.5g of protein, much less than the 20g protein content that it advertised.

54.     Had Defendant Owyn complied with the law and not made the protein claims on the front of their Products, Plaintiff would not have been drawn to the Products and would not have purchased them. At a minimum, Plaintiff would have paid less for each Product.

## *CLASS ACTION ALLEGATIONS*

55.      Under Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (c)(4), Plaintiff intends to seek

certification of a Nationwide Class consisting of:

**All persons who purchased the Products in the United States.**

56.      Plaintiff also intends to seek certification of a California Subclass consisting of:

**All natural persons who purchased the Products in the state of California.**

57.      Plaintiff reserves the right to re-define the Nationwide Class and California

Subclass at the conclusion of discovery as to class certification.

58.      Collectively, unless otherwise so stated, the above-defined Nationwide Class and

California Subclass are referred to herein as the "Class."

59.      Excluded from the Class are Defendant Owyn; any affiliate, parent, or subsidiary

of Defendant Owyn; any entity in which Defendant Owyn has a controlling interest; any officer,

director, or employee of Defendant Owyn; any successor or assign of Defendant Owyn; anyone

employed by counsel for Plaintiff in this action; any judge to whom this case is assigned, his or

her spouse, and all persons within the third degree of relationship to either of them and the spouses

of such persons.

## *NUMEROSITY*

60.      The members of the Class are so numerous that joinder of all members is

impracticable. While the exact number of Class members is unknown and such information is in

the exclusive control of Defendant Owyn, Plaintiff believes that the Class encompasses thousands

of individuals who are geographically dispersed throughout the nation; therefore, the number of

persons who are members of the Class are so numerous that joinder of all members in one action is impracticable.

## COMMON QUESTIONS OF LAW AND FACT PREDOMINATE

61.     There is a well-defined community of interest in the questions of law and fact affecting the Class members.

62.     There are questions of law and fact common to all members of each Class: specifically, Plaintiff's claims arise from the same event or practice or course of conduct by the Defendant giving rise to those claims of the putative Class, and Plaintiff's claims are based upon the same legal theories as those of the putative Class. The Defendant has engaged in a pattern and practice, in violation of the law, of misrepresenting the efficacy and health benefits of the Products. The resolution of this issue—to wit, whether Defendant Owyn knowingly sold the Products with misleading information and did not inform Plaintiff and Class members—is a common question of fact and law that will affect all members of the Class in the same manner.

63.     Other questions of law and fact common to the Class that predominate over questions that may affect individual members include:

a.     The nature, scope, and operation of Defendant Owyn's wrongful practices;

b.     The uniformity of the advertisements created through Defendant Owyn's marketing materials;

c.     Whether Defendant Owyn misrepresented the efficacy and health benefits of the Product;

d.     Whether Defendant Owyn engaged in fraudulent and/or deceptive practices as to the Class members;

e.     Whether Defendant Owyn violated state consumer protection laws by misrepresenting the efficacy and health benefits of the Product;

f.     Whether Defendant Owyn's conduct amounts to violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.;

False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and/or Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*;

g.    Whether Defendant Owyn deliberately misrepresented and omitted material facts to Plaintiff and the Class members;

h.    Whether members of the Class may be notified and warned about the contents of the Products and have the entry of final and injunctive relief compelling Defendant Owyn to stop its misrepresentations; and

i.    Whether Plaintiff and the Class suffered damages because of Defendant's misconduct and if so, the proper measure of damages.

### *TYPICALITY*

64.    The claims and defenses of Plaintiff Ri'Chard are representative of the Class members she seeks to represent and typical of the claims of the Class because the Plaintiff and the Class members all purchased the Products. Plaintiff, like all Class members, purchased the Product when they were presented by Defendant Owyn, through its representations on the Product's label and through Defendant Owyn's marketing and advertising of the Products, that the Products contained 20g of protein.

### *ADEQUACY OF REPRESENTATION*

65.    Plaintiff Ri'Chard will fairly and adequately assert and protect the interests of the proposed Class because:

a.    She has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class;

b.    She has no conflict of interest that will interfere with the maintenance of this class action; and

c.    She has suffered consumer-related injuries and damages.

### *SUPERIORITY*

66.    A class action provides a fair and efficient method for the adjudication of the

instant controversy for the following reasons:

    a.    The common questions of law and fact set forth above predominate over questions affecting only individual Class members;

    b.    The proposed class is so numerous that joinder would prove impracticable. The proposed Class, however, is not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the Class unmanageable;

    c.    Prosecution of separate actions by individual members of the Class would risk inconsistent and varying adjudications against Defendant Oyn;

    d.    The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover for the damages done to them by Defendant Owyn; and

    e.    A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

67.    In the alternative, the proposed Class may be certified because:

    f.    the prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent or varying adjudication regarding individual Class members, which would establish incompatible standards of conduct for Defendant Owyn;

    g.    the prosecution of separate actions by individual Class members would create a risk of adjudications dispositive of the interests of other Class members, not parties to the adjudications and substantially impair or impede their ability to protect their interests; and

    h.    Defendant Owyn has acted or refused to act on grounds generally applicable to the proposed class, which justifies final and injunctive relief for the members of the proposed Class as a whole.

### ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

68.    Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

69.     Defendant Owyn possessed exclusive knowledge about the efficacy and health benefits of the Product, including from its reports, analyses, and assessment of ingredients from suppliers, all of which are unavailable to Plaintiff and the proposed Class members.

70.     Throughout the time period relevant to this action, Defendant Owyn concealed and misrepresented the efficacy and health benefits of the Products. As a result, neither Plaintiff nor the absent Class members could have discovered the unfair and deceptive trade practices detailed herein, even upon reasonable exercise of diligence.

71.     Despite its knowledge of the above, Defendant Owyn (a) failed to disclose, (b) concealed, (c) misrepresented, and (iv) continues to conceal and misrepresent critical information relating to the Product's efficacy and health benefits, even though, at any point in time, it could have correctly communicated this material information to Plaintiff and the Class through individual correspondence, media releases, or other means.

72.     Plaintiff and Class members relied on Defendant Owyn to disclose the efficacy and health benefits of the Products because the contents could not be discovered through reasonable efforts by Plaintiff and the Class members.

73.     Thus, the running of all applicable statutes of limitations have been suspended with respect to any claims that Plaintiff and the Class members have against Defendant Owyn as a result of Defendant Owyn's misrepresentations and omissions, by virtue of the fraudulent concealment doctrine.

74.     Defendant Owyn was under a continuous duty to Plaintiff and Class members to disclose the true nature, quality, and character of its Products. However, Defendant Owyn misrepresented and/or omitted the true nature, quality, and character of the Products, as described herein. Based upon the foregoing, Defendant Owyn is estopped from relying on any statutes of

limitation or repose that might otherwise apply to the claims asserted by Plaintiff herein in defense of this action.

**FIRST CLAIM FOR RELIEF**

**Breach of Implied Warranty**

**(On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass)**

75.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

76.     Defendant Owyn sold the Products to Class members under implied warranties of merchantability and fitness. Owyn impliedly warranted the Products to be merchantable, fit for the ordinary purposes for which it was intended to be used (including the guarantee that they were in a safe and non-defective condition for use by its purchasers for the ordinary purpose for which they were intended and were not otherwise injurious). Defendant Owyn is under a duty to design, manufacture label, and test the Products to make them suitable for the ordinary purposes of their use as dietary protein supplements.

77.     Defendant Owyn breached its implied warranties for the Products by selling protein supplements that misrepresent the level of protein content present in the Product. The Products are therefore defective, unfit for the ordinary purposes for which they were intended to be used, and not merchantable.

78.     When Plaintiff and Class members purchased the Products, Defendant Owyn represented the Products as dietary supplements that (a) contained 20g of protein, (b) were adequately labeled, (c) would pass without objection in the trade, and (d) would be fit for the ordinary purposes for which nutritional supplements are used.

79.    Defendant Owyn knew that its Products would be purchased by consumers seeking a plant-based protein supplement containing high levels of protein per serving or otherwise seeking a potent gluten-free, non-dairy and vegan protein supplement, so it developed the Products and its related marketing and advertisements for these specific purposes. Defendant Owyn knew that the Products would be sold by retailers for use by consumers with these specific dietary needs. Accordingly, direct privity is not required to bring this cause of action.

80.    Because the Products does not contain 20g of protein which were represented by Defendant to Plaintiff and the Class, the Products purchased and used by Plaintiff and Class members is not merchantable. Defendant Owyn breached the implied warranty of merchantability in the sale of the Products to Plaintiff and the Class members in that the Products were not fit for their ordinary purpose and not merchantable.

81.    As a direct and proximate result of Defendant Owyn's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff and Class members did not receive the benefit of their bargains.

82.    Plaintiff and Class members are entitled to damages and other legal and equitable relief, including the purchase price of the Products, overpayment, or loss of the benefit of the bargain.

## SECOND CLAIM FOR RELIEF

### Breach of Express Warranty

### (On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass)

83.    Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

84.    Defendant Owyn extended, by way of the Products label, Products descriptions and representations as to the Products' qualities and characteristics, on its website, and via advertisements (among other in-person and digital marketing methods, as detailed herein) express warranties to Plaintiff and Class members that the Products contains 20g of protein. These promises and representations became part of the basis of the bargain between the parties and thus constituted an express warranty.

85.    Defendant Owyn sold the Products, and Plaintiff and Class members purchased the Products, based upon these representations and express warranties.

86.    However, Defendant Owyn breached the express warranties in that the Products did not in fact contain the qualities and characteristics, as set forth in detail herein. As a result of this breach of the express warranty, Plaintiff and other consumers did not receive the Products as warranted by Defendant Owyn.

87.    Defendant Owyn has been on notice of these material omissions and/or misrepresentations through, upon information and belief, its own internal research and development process, and through the nutritional disclosures made to it by its suppliers of ingredients for the Products. Defendant Owyn has had the opportunity to correct its misrepresentations of the Product's efficacy and health benefits but has chosen not to do so.

88.    As a proximate result of this breach of express warranty by Defendant Owyn, Plaintiff and the Class have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### Common Law Fraud By Omission

### (On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass)

89.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

90.     At all relevant times, Defendant Owyn was engaged in the business of designing, manufacturing, and selling the Products.

91.     Defendant Owyn, acting through its representatives or agents, delivered the Products to distributors, manufacturers, and various other distribution channels.

92.     Defendant Owyn willfully, falsely, and knowingly omitted and misrepresented material facts regarding the quality and character of the Products.

93.     Rather than disclosing material facts to Class members, including but not limited to, the fact that the Products does not contain 20g of protein, Defendant Owyn concealed and misrepresented key information related to the Product's efficacy and continued manufacturing and selling the Products without making accurate disclosures regarding the same.

94.     Defendant Owyn omitted and misrepresented the efficacy and health benefits of the Products to drive up sales and maintain its market power, since Defendant Owyn knew consumers would not purchase the Products (or would pay substantially less for the Products), had the Products' true protein content of 17.5g been advertised and represented to consumers.

95.     Consumers could not have discovered the actual efficacy of the Products on their own. Defendant Owyn was in exclusive possession of such information.

96.     Although Defendant Owyn had a duty to ensure the accurate representation of its Products and to ensure accuracy of information regarding the Products' health benefits, it did not fulfill these duties.

97.     Plaintiff and Class members sustained injury due to the purchase of the Products not containing 20g of protein as represented by Defendant Owyn. Plaintiff and Class members are entitled to recover full refunds for the Products, or they are entitled to damages for loss of the benefit of the bargain or the diminished value of the Products, amounts to be determined at trial.

98.     Defendant Owyn's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and Class members; and to enrich themselves. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future. Punitive damages, if assessed, shall be determined according to proof at trial that Defendant Owyn's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights, and in part to enrich itself at the expense of consumers. Defendant Owyn's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## FOURTH CLAIM FOR RELIEF

**Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.
(On behalf of the California Subclass)**

99.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

100.     Plaintiff Ri'Chard brings this claim individually and on behalf of the proposed California Subclass against Defendant Owyn.

101.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

102.    The acts, omissions, misrepresentations, practices, and non-disclosures of as alleged herein constitute business acts and practices.

103.    In the course of Defendant Owyn's business, it failed to disclose and, indeed, actively misrepresented the actual efficacy and health benefits contained in the Products with the intent that consumers rely on that concealment and misrepresentation in deciding whether to purchase the Product.

### Fraudulent

104.    A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

105.    Defendant Owyn's deceptive acts or practices were materially misleading and were likely to and did deceive reasonable consumers, including Plaintiff Ri'Chard and the California Subclass members, relating to its efficacy and health benefits and, therefore, the suitability of the Products to Plaintiff's and other California Subclass members' health goals.

106.    Plaintiff Ri'Chard and California Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant Owyn suppressed.

### Unlawful

107.    The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§17500 *et seq.*; and

- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

**Unfair**

108.    By intentionally misrepresenting that the Product contains 20g of protein represented by packaging and advertising the Products as a protein supplement conducive to consumers' health goals, Defendant Owyn's conduct was unfair because Defendant Owyn's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

109.    Defendant Owyn's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the False Advertising Law.

110.    Defendant Owyn's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably avoided.  Specifically, the increase in profits obtained by Defendant Owyn through the misleading labeling does not outweigh the harm to California Subclass Members who were deceived into purchasing the Products believing that the Products contain 20g of protein per serving, and that it was conducive to consumer health goals in that way, when in fact the Products did not contain 20g of protein per serving.

111.    Defendant Owyn profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

112.    Plaintiff and California Subclass Members are likely to continue to be damaged by Defendant Owyn's deceptive trade practices, because Defendant Owyn continues to disseminate misleading information. Thus, injunctive relief enjoying Defendant Owyn's practices is proper.

113.    Defendant Owyn's conduct caused and continues to cause substantial injury to Plaintiff and other California Subclass Members. Plaintiff _ has suffered injury in fact as a result of Defendant Owyn's unlawful conduct.

114.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoying Defendant Owyn from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

115.    Plaintiff and the California Subclass also seek an Order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

116.    Because Plaintiff's claims under the "unfair" prong of the UCL sweep more broadly than her claims under the FAL, CLRA, or UCL's "fraudulent" prong, her legal remedies are inadequate to fully compensate her for all of Defendant Owyn's challenged behavior.

117.    Moreover, because the Court has broad discretion to award restitution under the UCL and could, when assessing restitution under the UCL, apply a standard different than that applied to assessing damages under the CLRA or commercial code, and restitution is not limited to returning to Plaintiff _ and California Subclass Members monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the UCL, and are therefore inadequate.

**FIFTH CLAIM FOR RELIEF**

**Violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*.**
**(On behalf of the California Subclass)**

118.    Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

119.    Plaintiff Ri'Chard brings this claim individually and on behalf of the proposed California Subclass against Defendant Owyn.

120.    The False Advertising Law (FAL) provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which [are] known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

121.    Defendant Owyn's labeling and advertisements relating to the efficacy and health benefits of the Products were false and misleading, and likely to mislead consumers acting reasonably, as to the Products containing 20g of protein per serving, and that it was conducive to consumer health goals in that way.

122.    These misrepresentations and omissions have resulted in consumer injury or harm to the public interest.

123.    As a result of this misrepresentation, Plaintiff and members of the California Subclass have suffered economic injury because (a) they would not have purchased the Products had they known the truth, and (b) they overpaid for the Products on account of Defendant Owyn's false and misleading marketing claims stating or suggesting that the Products contain 20g of protein per serving, and that it was conducive to consumer health goals in that way.

124.    Defendant Owyn's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant Owyn has

advertised the Products in a manner that is untrue and misleading, which Defendant Owyn knew or reasonably should have known, and omitted material information from the Products' labeling.

125.    Defendant Owyn profited from the sale of the falsely and deceptively advertised Products to unwary consumers.

126.    As a result, Plaintiff, the California Subclass, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant Owyn was unjustly enriched.

127.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the California Subclass, seeks an order enjoining Defendant Owyn from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

128.    Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA or commercial code, and restitution is not limited to returning to Plaintiff and California Subclass Members monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

129.    In addition, because the procedures for obtaining relief under the FAL are more efficient than under the CLRA or commercial code, Plaintiff's legal remedies are inadequate.

**SIXTH CLAIM FOR RELIEF**
**Violation Of California's Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq.* (the "CLRA")**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass)**

130.    Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

131.    Plaintiff Ri'Chard asserts this claim on behalf of the Nationwide Class or, in the alternative, the California Subclass.

132.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

133.    Defendant Owyn is a "person" within the meaning of California Civil Code Sections 1761(c) and 1770 and provided "goods" within the meaning of sections 1761(a) and 1770.

134.    Defendant Owyn's acts and practices, as alleged in this Complaint, violate California Civil Code sections 1770(a)(5), (7), and (9) because they include unfair and deceptive acts and practices in connection with transactions – the sale of falsely labeled protein supplement products. Specifically, in violation of the CLRA, Defendant Owyn:

   a.    Knowingly designed, developed, manufactured, advertised, and sold the Products that deceptively claims to have a higher protein content than it actually does, resulting in consumers not receiving the benefit of their bargain;

   b.    Marketed and sold the Products that relied upon its high protein content as a means to differentiate the Products from competing plant-based, non-dairy protein supplements;

   c.    Made affirmative public representations about the high protein content of the Products while, at the same time, not ensuring that high protein content in practice.

135.    Defendant Owyn was under a duty to disclose the true protein content of the Products because it had superior knowledge of the protein content – stemming from its own production thereof, quality control and pre-release testing, and online reputation management.

136.    Defendant Owyn had ample means and opportunities to disclose to Plaintiff and Class members that the Products is mislabeled, including through advertisements, external packaging and the nutrition label. Despite its exclusive knowledge and these opportunities to disclose the true protein content, Defendant Owyn failed to disclose to Plaintiff and Class members the actual protein content of the Products of 17.5g either prior to purchase or before Plaintiff's and Class members' respective buyer's remorse periods expired.

137.    Defendant Owyn's misrepresentations and omissions were material. Had Plaintiff and Class members known that the Class Device did not contain the protein content as advertised, they either (a) would not have purchased it, (b) would not have purchased it at the prices they did, or (c) would have returned it during their respective buyer's remorse periods.

138.    Plaintiff and Class members were injured by Defendant Owyn's CLRA violations. As a result, Plaintiff seeks and is entitled to declaratory and injunctive relief, to be further determined at trial.[7]

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

---

[7] Under California Civil Code section 1782(a), Plaintiff Ri'Chard is required to separately send, on behalf of the California Subclass, a notice to Defendant Owyn via letter, sent by certified mail, return receipt requested, to Defendant Owyn's principal place of business, advising Defendant Owyn of its violations and that it must correct, replace, or otherwise rectify the goods alleged to be in violation. Because Plaintiff Ri'Chard has not yet sent the notice to Defendant Owyn, she is currently seeking injunctive relief under the CLRA. However, if Defendant Owyn fails to adequately respond to Plaintiff Ri'Chard's notice sent September 3, 2024, she will amend the complaint to include a request for: (a) actual damages resulting from the purchase of the Products sold throughout the Class Period to all Class Members; (b) punitive damages; (c) restitution; and (d) attorneys' fees and costs. *See* CLRA 1782(d).

a.  For an order certifying the proposed Class and appointing Plaintiff and Plaintiff's counsel to represent the Class;

b.  For an order awarding Plaintiff and Class members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

c.  For an order awarding Plaintiff and Class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

d.  For an order or orders requiring Defendant Owyn to adequately disclose the efficacy of the Products and enjoining Defendant Owyn from misrepresenting that the Products contain 20g of protein per serving and omitting accurate information about the Products' efficacy;

e.  For an order awarding Plaintiff and Class members pre-judgment and post-judgment interest;

f.  For an order awarding Plaintiff and Class members reasonable attorney fees and costs of suit, including expert witness fees; and

g.  For an order awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, individually and on behalf of the members of the Class, hereby respectfully demands trial by jury of all issues triable by right.

DATED: September 4, 2024                    Respectfully Submitted,

*/s/ Robert Mackey*
Robert Mackey, Esq.
CA Bar No.: 125961
**LAW OFFICES OF ROBERT MACKEY**
P.O. Box 279
Sewickley, PA 15143
Tel. (412) 370-9110
bobmackeyesq@aol.com

Nicholas A. Migliaccio, Esq.*
Jason S. Rathod, Esq.*
**MIGLIACCIO & RATHOD LLP**

412 H Street NE, Suite 302
Washington, DC 20002
Tel. (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

D. Aaron Rihn, Esq.*
Sara J. Watkins, Esq.*
**ROBERT PEIRCE & ASSOCIATES, P.C.**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Tel. (412) 281-7229
arihn@peircelaw.com
swatkins@peircelaw.com

Daniel C. Levin, Esq.*
Charles E. Schaffer, Esq.*
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel. (215) 592-1500
dlevin@lfsblaw.com
cschaffer@lfsblaw.com

*Pro hac vice application forthcoming.

*Attorneys for Plaintiff and Putative Class*